UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re:                                    :
STEVEN L. SAUNDERS                        :            Case No. 04-23144REF
and EMILY J. SAUNDERS,                    :            Chapter 7
            Debtors                       :

# M E M O R A N D U M   O P I N I O N

## I.  INTRODUCTION AND BACKGROUND

This dispute arises from the classification of a debtor's unsecured debt as contingent

or noncontingent and as liquidated or unliquidated to determine the debtor's eligibility and

qualification to file a Chapter 13 bankruptcy petition under Section 109(e) of the Bankruptcy

Code, 11 U.S.C. §109(e) ("Section 109(e)").  Also at issue is the Debtors' attempt to limit the

value of their assets and then claim them as exempt under the so-called "wild card"

exemption of Section 522(d)(5), 11 U.S.C. §522(d)(5) ("Section 522(d)(5)").

Debtors in this case, Steven L. Saunders ("Mr. Saunders") and Emily J. Saunders

("Mrs. Saunders"), filed their voluntary chapter 13 petition on June 14, 2004, and filed their

Schedules of Assets and Liabilities (together with all amendments, the "Schedules") and

Statement of Financial Affairs on July 29, 2004.  Debtors subsequently amended Schedule F

(Creditors Holding Unsecured Non-Priority Claims) on two different dates.  On their

Schedules, Debtors listed total secured debt in the amount of $294,782.71, and total

unsecured debt of $1,572,978.31.  Of this unsecured amount, $268,711.31 was identified as

non-contingent, liquidated, unsecured debt and the remainder ($1,304,267) was listed as

contingent, unsecured debt.  Debtors' Schedules list: (1) 37 creditors owed non-contingent,

liquidated unsecured debt in an unknown amount; (2) two creditors owed contingent,

unsecured debt in an unknown amount; (3) one creditor owed an unliquidated, disputed debt

in an unknown amount, and (4) nineteen creditors owed contingent, disputed debt in an

unknown amount.

On January 5, 2005, the Chapter 13 Trustee filed a motion to dismiss Debtors' case, in

which he alleged both that the filing was in violation of 11 U.S.C. §109(e) and that Debtors'

Chapter 13 plan was not feasible. The Court scheduled a hearing on the motion on February

3, 2005, which hearing was continued several times, eventually being rendered moot when

Debtors voluntarily converted their case to Chapter 7 on September 12, 2005.  In November

2005, the Chapter 7 Trustee filed a Notice of Change from No Asset to Asset Case and an

Objection to Debtors' Exemptions (the "Original Objection to Exemptions").  Debtors

responded by filing a Motion To Convert Case to Chapter 13 (the "Motion To Convert") on

November 21, 2005, a Reply to the Original Objection to Exemptions on December 5, 2005,

and Amended Schedules B (Personal Property) and C (Property Claimed as Exempt) on

December 22, 2005.  On December 9, 2005, the Chapter 7 Trustee filed an Objection to

Debtors' Motion To Convert and on January 20, 2006, the Chapter 7 Trustee filed a

Supplemental Objection to Debtors' Exemptions (together with the Original Objection to

Exemptions, the "Objections to Exemptions").

At the February 16, 2006, hearing on Debtors' Motion To Convert and on the Chapter

7 Trustee's Objections to Exemptions, I ordered briefs from the parties. On April 18, 2006,

the Chapter 7 Trustee filed a Motion To Reopen the Record on Debtors' Motion To Convert,

2

which motion I granted.  A hearing on the reopened record was held on May 3, 2006, and on

June 7, 2006, I ordered the Chapter 13 Trustee to weigh in on Debtors' Motion To Convert.

All supporting and opposing briefs have been filed and Debtors' Motion To Convert and the

Chapter 7 Trustee's Objections to Exemptions are now ripe for disposition.

I will begin by discussing Debtors' Motion To Convert because if that Motion is

granted and this case is converted to Chapter 13, the Chapter 7 Trustee's Objections to

Exemptions would be rendered moot.  For the reasons that follow, however, I find that

Debtors do not qualify as Chapter 13 debtors under 11 U.S.C. §109(e), and I therefore deny

Debtors' Motion To Convert.  In addition, I agree with the position advanced by the Chapter

7 Trustee concerning Debtors' claims of exemptions and I sustain the Chapter 7 Trustee's

Objections to Exemptions.

## II.  DISCUSSION: DEBTORS' MOTION TO CONVERT CASE TO CHAPTER 13

### A.  Review of Section 109(e) - Noncontingent, Liquidated, Unsecured Debt.

Both the Chapter 7 Trustee and the Chapter 13 Trustee argue that Debtors' Motion To

Convert should be denied because the amount of Debtors' noncontingent, liquidated,

unsecured debt exceeds the dollar limit of $307,675[1] permitted for an individual and spouse

to qualify as Chapter 13 debtors under 11 U.S.C. §109(e).  For the reasons that follow, I

agree.

---

[1]The debt ceiling contained in Section 109(e) is adjusted every three years pursuant to 11
U.S.C. §104(b)(1).  For the three year period commencing April 1, 2004, the debt limitations
found in Section 109(e) had been adjusted to limit Chapter 13 eligibility to individuals who
owed, as of the filing date, less than $307,675 in noncontingent, liquidated unsecured debt, and
less than $922,975 in noncontingent, liquidated secured debt.

For all dates relevant to this dispute, Section 109(e) states:

> Only an individual with regular income that owes, on
> the date of the filing of the petition, noncontingent, liquidated,
> unsecured debts of less than $307,675 and noncontingent,
> liquidated, secured debts of less than $922,975, or an individual
> with regular income and such individual's spouse, except a
> stockbroker or a commodity broker, that owe, on the date of the
> filing of the petition, noncontingent, liquidated, unsecured
> debts that aggregate less than $307,675 and noncontingent,
> liquidated, secured debts of less than $922,975 may be a debtor
> under chapter 13 of this title.

11 U.S.C. §109(e).  Section 706(d), 11 U.S.C. §706(d), expressly requires that a Chapter 7

debtor must qualify as a debtor under Chapter 13 for him to convert a Chapter 7 case to a

case under Chapter 13.  This means, of course, that a debtor must satisfy the requirements of

Section 109(e), to be entitled to convert his case to a case under Chapter 13.  In re Hansen,

316 B.R. 505, 508 (Bankr. N.D. Ill. 2004); In re Widdicombe, 269 B.R. 803, 805 (Bankr.

W.D. Ark. 2001).  These requirements have been explained in a leading bankruptcy treatise

as follows:

> The eligibility requirements for status as a debtor under
> chapter 13 . . . are contained in section 109(e).  One of the
> purposes of chapter 13 is to allow the small sole proprietor, for
> whom the reorganization process provided in chapter 11 is too
> cumbersome or otherwise inappropriate, to obtain relief under
> the Bankruptcy Code.  The eligibility criteria set forth in
> section 109(e) are specific and restrictive, with monetary
> amounts established to govern eligibility so as to ensure that
> those persons for whose benefit the chapter is directed are those
> who employ its provisions.  Thus, the fundamental purpose of
> section 109(e) is to establish the dollar limitation on the amount
> of indebtedness that an individual with regular income can
> incur and still file under chapter 13.

4

\* \* \*

> In contrast to provisions involving chapter 7 debtors, the language of section 109(e) is drafted explicitly to require that a chapter 13 debtor owe debts on the date that the petition is filed. However, while the debtor must owe some debts, the debtor cannot owe debts in too large an amount and still expect to take advantage of the streamlined rehabilitative scheme provided in chapter 13. Thus, the core of subsection (e) is its monetary limitation on eligibility for chapter 13 relief. The monetary limitations of subsection (e) reflect Congress's recognition that a chapter 11 reorganization might be too cumbersome a procedure for a sole proprietor or individual with a small amount of debt. At the same time, they ensure that chapter 13 is not used by individuals with large businesses in which the creditor protections of chapter 11, such as voting and the disclosure statement, are more important.

Collier on Bankruptcy, 15th Ed. Rev., ¶¶109.06, 109.06[2].

Contingent or unliquidated unsecured debts are not included as unsecured debt for the purpose of the Section 109(e) eligibility determination, but noncontingent, liquidated debts that are disputed are included in this determination. Mazzeo v. United States (In re Mazzeo), 131 F.3d 295, 303-05 (2nd Cir. 1997); United States v. Verdunn, 89 F.3d 799, 802, n.9 (11th Cir. 1996); Barcal v. Laughlin (In re Barcal), 213 B.R. 1008, 1012 (8th Cir. BAP 1997); Gaertner v. McGarry (In re McGarry), 230 B.R. 272, 275 (Bankr. W.D. Pa. 1999).

> A debt is contingent where "the debtor 'will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor.'" In re Weiss, 251 B.R. 453, 465 (Bankr. E.D. Pa. 2000)(quoting In re Fostvedt, 823 F.2d 305, 306 (9th Cir. 1987)). A noncontingent debt is one where "all events giving rise to the liability for the debt occurred prior to the debtor's filing for bankruptcy." Id. (quoting In re Mazzeo, 131 F.3d 295, 303 (2d Cir.1997)). A debt is liquidated if "the value of the claim is easily ascertainable." Id.

5

In re Heaton, Civ. A. Nos. 00-3433, 98-21887, 2001 WL 1175099, at *1 (E.D. Pa. Sept. 28, 2001). Courts often refer to a guarantee as the quintessential example of a contingent debt because the guarantor typically has no liability unless and until the principal defaults. Upon the principal's default, however, the guarantor's obligation to pay arises and becomes a noncontingent debt.  In re Martz, 293 B.R. 409, 411 (Bankr. N.D. Ohio 2002); In re Pennypacker, 115 B.R. 504, 507 (Bankr. E.D. Pa. 1990).

The concept of a liquidated debt relates to the amount of the debt, not to the existence of liability.  Verdunn, 89 F.3d at 802.  That a dispute might exist about the underlying liability or the amount of the debt does not render the debt contingent or unliquidated.  Id. at 802, n.9.  Rather, a debt is liquidated if the amount due can be determined with sufficient precision.  Typically, debts of a contractual nature are liquidated, even if they are disputed. Pennypacker, 115 B.R. at 505.

Debtors argue that the great majority of their unsecured debt is contingent and unliquidated and therefore does not count toward the Section 109(e) unsecured debt dollar limit.  The evidence before me, however, convinces me otherwise.

## B. Noncontingent, Liquidated, Unsecured Debt Owed by Debtors.

Debtors list in their Schedules the debts owed by them jointly as well as debts owed by each Debtor individually.  Some of these debts are alleged to be owed only by Debtor, Mr. Saunders, some are alleged to be owed only by Debtor, Mrs. Saunders, and some are alleged to be owed by both Debtors jointly. The parties' argument whether Debtors' noncontingent, liquidated unsecured debt exceeds the Section 109(e) debt limitation, however, combines all

of the debt owed by Debtors, regardless whether that debt is owed by Mr. Saunders

individually, by Mrs. Saunders individually, or by Debtors jointly.  Because this is the

manner through which the parties chose to present the Section 109(e) issue to me, I will

address the issue in this manner as well.  For the sake of thoroughness, however, I will also

analyze the Section 109(e) limitation on debt as it applies to each Debtor individually.

Although no party has undertaken this analysis, I will review the noncontingent, liquidated

unsecured debt owed by each Debtor to determine whether either Debtor could qualify

individually as a Chapter 13 debtor under Section 109(e).  As shown below, the

noncontingent, liquidated unsecured debt owed by each Debtor exceeds the Section 109(e)

threshold whether the debt is considered jointly or individually.  Therefore, neither Debtor

could qualify as a Chapter 13 debtor even if they were proposing to proceed with individual

Chapter 13 cases rather than a joint Chapter 13 case.

      Because the amount and nature of the debt owed by Debtors are critical, and because I

could not find in the briefs accurate arithmetic support for the amount of debt suggested by

Debtors, and because much of the debt in this joint Chapter 13 is owed individually by one

debtor or the other, rather than jointly, I reviewed Debtors' Schedules to determine, as closely

as possible, the amounts owed by the Debtors individually and jointly.  Initially, I will

summarize that comprehensive debt calculation below.  Then I will explain how I approached

the determination of the amount and nature of various claims.  Finally, I will analyze the

amount and nature of certain large claims of indebtedness to determine if they are direct

obligations that figure into Section 109(e) eligibility or contingent guarantee obligations that

are not considered.

### 1. <u>Summary of Noncontingent, Liquidated Unsecured Debt Owed by Debtors.</u>

(a) <u>Noncontingent, Liquidated Unsecured Debt Owed By Mrs. Saunders Either Individually or Jointly with Mr. Saunders.</u>

(1)  As alleged in Debtors' Schedules: $107,062.33 ("Mrs. Saunders' Base Debt").

(2) Mrs. Saunders' Base Debt, plus the noncontingent, liquidated unsecured debt owed to JWK Properties or its principals ($233,000)[2] = $340,062.33.

(b) <u>Noncontingent, Liquidated Unsecured Debt Owed by Mr. Saunders Either Individually or Jointly with Mrs. Saunders.</u>

(1)  As alleged in Debtors' Schedules:  $231,996.70 ("Mr. Saunders' Base Debt").

(2) Mr. Saunders' Base Debt, plus the noncontingent, liquidated unsecured debt owed to JWK Properties or its principals ($233,000) = $464,996.70.

(3) Mr. Saunders' Base Debt, plus the noncontingent, liquidated unsecured debt owed to Sovereign Bank, successor to Waypoint Bank ($256,566.01)[3] = $488,562.71.

(4) Mr. Saunders' Base Debt, plus the noncontingent, liquidated unsecured debt owed to both JWK Properties or its principals ($233,000) and Sovereign Bank

---

[2]The discussion of the JWK Properties debt owed by both Debtors jointly and severally is at fn. 9, 10, 11, & 12 and at pp. 10 and 14 - 18 of the text, below.

[3]The discussion about the Sovereign Bank debt owed by Debtor Mr. Saunders (but not by Debtor Mrs. Saunders) is at fn. 6, 7, & 8 and pp. 10 - 14, below.

($256,566.01) = $721,562.71.

                (c)  <u>Noncontingent, Liquidated Unsecured Debt Owed by Both Mr. and Mrs.</u>
<u>Saunders.</u>

                     (1)  As alleged in Debtors' Schedules: $268,711.31[4] ("Joint Base

Debt").

                     (2) The Joint Base Debt, plus the noncontingent, liquidated unsecured

debt owed to Sovereign Bank ($256,566.01) = $525,277.32.

                     (3)  The Joint Base Debt, plus the noncontingent, liquidated unsecured

debt owed to JWK Properties or its principals($233,000) = $501,711.31.

                     (4) The Joint Base Debt, plus the noncontingent, liquidated unsecured

debt owed to both JWK Properties or its principals ($233,000) and Sovereign Bank

($256,566.01) = $758,277.32.

      **2.  <u>General Noncontingent, Liquidated Debts Owed by Debtors.</u>**

      Debtors' Schedules reflect that, as of the filing of their original Chapter 13 petition,

they owed, individually and jointly, a total of $268,711.31 in Joint Base Debt.  They list three

large unsecured debts in their Schedules, however, as contingent and as being owed in the

---

[4]This is the total of the debt listed in Debtors' Schedules as noncontingent and liquidated and includes all debt owed by Mr. Saunders individually, owed by Mrs. Saunders individually, and owed by Mr. and Mrs. Saunders jointly.  In their brief, Debtors claim, with no explanation, list, or accounting, that only $218,615 of the unsecured debt listed on their Schedules was noncontingent and liquidated.  <u>See</u> Debtors' Initial Brief in Support of Motion To Convert Case to Chapter 13, at 5.  Debtors' Schedules, however, reveal that the total amount of unsecured debt identified as noncontingent and liquidated is actually $268,711.31.  As will be apparent below, whether this portion of Debtors' unsecured debt is $218,615 or $268,711.31 is immaterial to resolution of the dispute.

following specified amounts to: (1) Farmers First Bank, which is alleged to be owed $236,000

based on Debtors' guarantee of a loan made by Farmers First to an unidentified third party

borrower;[5] (2) Waypoint Bank, predecessor in interest to Sovereign Bank (together,

"Sovereign"), which is alleged to be owed $493,267 based on the guarantee by Debtor, Mr.

Saunders, of a loan made by Sovereign to an unidentified third party borrower;[6] and (3)  JWK

Properties, which is alleged to be owed $575,000 based on Debtors' guarantee of a loan made

by JWK Properties, or its principals, to an unidentified third party borrower.  Debtors argue

that these three debts are contingent guaranties and may not be included to calculate the

amount of their noncontingent, liquidated unsecured debt under Section 109(e).

As is certainly obvious, Debtors' Joint Base Debt plus any one of these three large

obligations that might be found to be noncontingent and liquidated will exceed the unsecured

debt limit of Section 109(e).

### 3.  Noncontingent, Liquidated, Unsecured Debt Owed by Debtor, Mr. Saunders, to Sovereign Bank.

Debtors argue that the debt owed to Sovereign is contingent because it is based upon a

purported guarantee given by Mr. Saunders, and Sovereign allegedly never made written

---

[5]Neither Debtors' Schedules nor any other document called to my attention identify the primary obligor of the underlying debt owed to Farmers First Bank and Farmers First Bank did not file a claim.  Moreover, none of the parties discuss the debt owed by Debtors to Farmers First Bank in the briefs they filed in this case.  My review and discussion of the debts owed to Sovereign or JWK Properties or its principals suffice to show that Debtors' noncontingent, liquidated unsecured debt exceeds the Section 109(e) limitation, so I will not consider the Farmers First Bank debt in any way.

[6]Various pleadings, briefs and other documents that are part of the record in this case identify the principal obligor of the Sovereign obligation as SMG Entertainment, Inc.

demand upon Mr. Saunders for payment on the guarantee. Sovereign's proof of claim (claim number 42) in this bankruptcy case, however, asserts unequivocally that, as of the date of Debtors' bankruptcy filing, Mr. Saunders owed $256,566.01 to Sovereign. Sovereign identifies its claim as a general, unsecured debt. Attached to Sovereign's claim is a copy of the Commercial Guaranty that forms the documentary basis of the claim. Through the Commercial Guaranty, Mr. Saunders specifically waives any right to require Sovereign "to make presentment, protest, demand, or notice of any kind including notice of any nonpayment of the indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower [SMG Entertainment, Inc.], Lender [Sovereign], any surety, endorser, or other guarantor in connection with the indebtedness . . ." Sovereign was clearly not required to make formal demand for payment upon Mr. Saunders to trigger his direct liability under the Commercial Guaranty. Furthermore, the undisputed documentary evidence admitted during the hearing held on May 3, 2006, shows that, on April 4, 2004, Sovereign took the formal step of making the obligation direct, personal, and noncontingent by confessing judgment against Mr. Saunders individually in the amount of $493,267 based on the debt that he owed.[7]

---

[7]The parties do not address whether Sovereign is the holder of a secured claim based on the entry of the confessed judgment. The proof of claim filed by Sovereign was filed as an unsecured claim and all of the parties refer to Sovereign's claim as unsecured. The parties apparently agree that the confessed judgment obligation owed by Mr. Saunders is not secured because he owns no real property in his name alone in the county in which the confessed judgment was taken. See 42 Pa. C.S.A. §4303(a); Pa. R. Civ. P. 3023(a). Moreover, the Sovereign confessed judgment was entered within ninety days before the date on which Debtors filed their Chapter 13 petition, and might arguably be avoided as a preferential transfer under Section 547(b), 11 U.S.C. §547(b), if it provided Sovereign with a lien on or interest in property

The evidence negates Debtors' argument that the debt owed to Sovereign is contingent because Sovereign did not demand payment of the debt from Mr. Saunders.  Also, because the amount of the debt owed to Sovereign can be clearly and easily determined with precision by referring either to the proof of claim filed by Sovereign (with the exhibits attached thereto) or to Debtors' Schedules, the debt owed to Sovereign must be regarded as liquidated.  For all of these reasons, therefore, the argument by Debtors that the debt owed to Sovereign is unliquidated and contingent is without merit.  See Mazzeo, 131 F.3d at 303-05; Verdunn, 89 F.3d at 802-03; Barcal, 213 B.R. at 1013-14;  Heaton, 2001 WL 1175099, at *2; McGarry, 230 B.R. at 275-76.

As stated earlier, Sovereign confessed judgment against Mr. Saunders in the amount of $493,267 on April 4, 2004, but the proof of claim filed by Sovereign on February 10, 2006 indicates that it was owed only $256,566.01 as of June 14, 2004 (the date on which Debtors filed their petition initiating this case).  The discrepancy can be reconciled, however, by comparing the itemized proof of claim with the itemized confessed judgment.  The two documents were prepared as of, and reflect amounts owed by Mr. Saunders to Sovereign on, different dates.

The confessed judgment was entered on April 4, 2004, and reflects the amount owed by Mr. Saunders to Sovereign as of that date.  The proof of claim filed by Sovereign, however, reflects the amount owed by Mr. Saunders to Sovereign as of the date Debtors filed their bankruptcy petition over two months later (June 14, 2004), crediting him for a principal

owned by Mr. Saunders that Sovereign did not have prior to the entry of the judgment.

payment reducing the amount of the debt by $220,000 during this interim period.  Also,

additional interest and late charges had become due during this interim period.  The

documents also show that the amount claimed to be due for attorneys' fees was substantially

reduced during this interim period, apparently to reflect the actual amount of attorneys' fees

incurred at that time rather than the maximum permitted to be recovered through the

underlying documents.

The amount of the Sovereign confessed judgment was itemized as follows:

| | |
|---|---|
| Principal Balance: | $ 433,770.95 |
| Interest through 4/5/04: | $   13,583.68 |
| Late Charges: | $     2,535.27 |
| Reasonable Attorneys Fees (10%): | $   43,377.10 |
| TOTAL | $ 493,267.00 |

The amount of the Sovereign claim was itemized as follows:

| | |
|---|---|
| Principal Balance: | $433,770.95 |
| (Less principal payment): | ($220,000.00) |
| Interest through 6/14/04: | $ 19,198.96 |
| Late charges: | $   3,596.96 |
| Uncollected fees | $  20,000.00 |
| TOTAL | $256,566.01 |

Both the Chapter 7 Trustee and the Chapter 13 Trustee rely upon the lower figure of

$256,566.01 as the amount owed to Sovereign to determine the amount of noncontingent,

liquidated unsecured debt owed by Debtors under Section 109(e).  According to the above

calculations, I agree that $256,566.01 is the correct figure, although, obviously, whether the

debt is $256,566.01 or $493,267.00 does not matter in this dispute.

Adding the amount of the Sovereign debt, which is $256,566.01, to Mr. Saunders'

13

Base Debt ($231,996.70) or the Joint Base Debt ($268,711.31),[8] results in an amount that clearly exceeds the $307,675 limitation under Section 109(e).

Only Mr. Saunders, not Mrs. Saunders, guaranteed the debt owed to Sovereign. Therefore, the debt owed to Sovereign is not included in determining the amount of debt owed by her for purposes of determining her eligibility under Section 109(e). See Collier on Bankruptcy, at ¶109.06[4], n. 52 (citing In re Tabor, 232 B.R. 85 (Bankr. N.D. Ohio 1999)). As discussed below, I find nonetheless that neither Mr. Saunders nor Mrs. Saunders qualifies individually as a Chapter 13 debtor because the amount of either Mr. Saunders' Base Debt or Mrs. Saunders' Base Debt, added to the JWK debt, exceeds the $307,675 permitted to be owed under Section 109(e).

### 4.  Contingent, Liquidated, Unsecured Debt Owed by Debtors to JWK Properties or Its Principals.

Debtors' Schedules classify the debt owed to JWK Properties as contingent, joint debt owed by both Mr. and Mrs. Saunders based on a "loan guarantee." Mr. Saunders testified that he and Mrs. Saunders, among others, signed certain judgment notes evidencing their obligation owed to JWK, but that he always assumed that the underlying obligation existed as

---

[8]My conclusion would remain unchanged even if I were to utilize the amount that Debtors admit in their brief that they owe in noncontingent, liquidated, unsecured debt as of the date of their bankruptcy filing ($218,615), and add to this figure the $256,566.01 noncontingent, liquidated unsecured debt owed to Sovereign. Utilizing even the lower figure, the amount of noncontingent, liquidated, unsecured debt owed by Debtors would greatly exceed the Section 109(e) limitation.

debt owed by Movi-E-Town, Inc.  N.T. at 77.[9]   No evidence was introduced, however, to

establish that Movi-E-Town is the principal obligor of this debt or that Debtors are somehow

guarantors of this obligation.  Mr. Saunders also testified that the obligation owed to JWK

was contingent upon "Movi-E- Town having profit," N.T. at 64, but no evidence supports that

any such contingency in fact existed.

The original proofs of claim filed by the individual principals of JWK Properties

(claim numbers 28, 30 and 31) and the original proof of claim filed by JWK Properties (claim

number 29), reveal that the debt is owed by Debtors, Mr. and Mrs. Saunders, as a direct

obligation and not as a guarantee of some debt owed by a third party principal obligor.  Each

of the original four claims was in the amount of $913,843,18.   During the February 16, 2006,

hearing, counsel for the JWK Properties parties, George J. Shoop, Esquire ("Mr. Shoop"),

advised in open court, upon the request of counsel for Debtors, that JWK Properties and its

principals had agreed to consolidate their claims into one claim in the unsecured amount of

$233,000, which would be deemed undisputed, liquidated and noncontingent as of the date of

that hearing.  N.T. at 6-7.  Shortly thereafter, on February 22, 2006, Mr. Shoop filed a single

claim, purporting to amend the three claims of the JWK Properties principals, reducing such

claims to $233,000.  On that date, Mr. Shoop formally withdrew the claim of JWK Properties

---

[9]Movi-E-Town is currently a debtor in possession in a pending Chapter 11 bankruptcy
case in this court, which case has been re-assigned to my colleague, Bankruptcy Judge Jean K.
FitzSimon (Case No. 04-20890JFK).  Although the related Chapter 11 case of Movi-E-Town
was transferred to Judge FitzSimon, I kept this case (at least for disposition of this matter)
because I had heard the testimony and had received the exhibits in the two hearings held in this
disputed matter.

entirely.  On June 16, 2006, however, Mr. Shoop again amended the previously amended

claims by filing a re-amended claim in the name of the three principals of JWK Properties,

which re-amended claim was once again in the amount of $913,843.18.

Each of the four original claims filed on behalf of JWK Properties and its principals

(referred to together as "JWK"), however, has attached thereto a copy of a judgment note

dated February 23, 1999, and signed by both Debtors, Mr. and Mrs. Saunders, and others,[10]

obligating each of them, jointly and severally, to pay, not to JWK Properties, but to its

principals individually, the sum of $500,000 (the "$500,000 Note").  The $500,000 Note

describes the terms and conditions by which Debtors' immediate and direct repayment of the

debt was to occur.

Also attached to each of the four original JWK proofs of claim is a copy of another

judgment note dated March 12, 1999, and signed by both Debtors, Mr. and Mrs. Saunders,

and others, obligating each of them, jointly and severally, to pay, not to JWK Properties, but

to its principals individually, the sum of $50,000 (the "$50,000 Note").  The $50,000 Note

describes the terms and conditions by which Debtors' immediate and direct repayment of the

debt was to occur.  The $50,000 Note also has language that describes collateral in the form of

a mortgage on certain real property.  The JWK claims, however, identify the entire obligation

of Debtors as unsecured.  I am left to speculate whether the $50,000 Note was paid in full,

was never actually secured, or lost its collateral somehow at some time. It matters not for my

_____

[10]I believe that these are the judgment notes to which Mr. Saunders referred in his
testimony.  See N.T. at 77.

16

purposes in this dispute how the $50,000 Note became an unsecured obligation; it matters

only that the entire debt owed to JWK is admittedly unsecured.[11]

Both the $500,000 Note and the $50,000 Note (together, the "Notes") evidence direct

obligations presently owed by Debtors jointly and severally to the JWK principals, rather than

guarantees.[12]  Both Notes contain language waiving formal presentment, demand for payment,

notice of dishonor, or demands in connection with the delivery, acceptance, performance,

default, or enforcement of the Notes. Debtors do not list the debt owed to JWK as

unliquidated.  Even if Debtors listed the debt as unliquidated, the amount could be determined

with sufficient precision by reviewing the payment history reducing the amount owed on the

Notes.  I therefore find that the debt owed by Debtors to JWK is noncontingent and liquidated.

I will assume that the lower of the amounts alleged to be owed to JWK by Debtors

($233,000) is correct.  I will then add this amount to the aggregate amount of other

noncontingent, liquidated unsecured debt admitted to be owed by Debtors individually,

$107,062.33 owed by Mrs. Saunders and $231,996.70 owed by Mr. Saunders.  Upon that

calculation, I conclude that both Mr. Saunders and Mrs. Saunders owed an amount that clearly

exceeds the $307,675 limitation on noncontingent, liquidated unsecured debt under Section

109(e).  The result would not change if I added the amount owed by Debtors to JWK

---

[11]But as is abundantly evident, even deducting $50,000 from the JWK debt, leaves
Debtors far in excess of the debt limitation in Section 109(e).

[12]Although it certainly appears that the principals of JWK Properties are the direct and
primary obligees of the debt, whether Debtors owe their debt to JWK Properties or to its
principals is not determinative of the issues before me.

17

($233,000) to the Joint Base Debt ($268,711.31).  In such a calculation, the amount of

noncontingent, liquidated, unsecured debt owed by Debtors still exceeds the amount permitted

under Section 109(e) for a Chapter 13 debtor.

Accordingly, I find that Debtors do not qualify as Chapter 13 Debtors under Section

109(e) either individually or jointly and their Motion To Convert must therefore be denied.

### III.  DISCUSSION:  CHAPTER 7 TRUSTEE'S OBJECTION TO DEBTORS' EXEMPTIONS.

Having concluded that Debtors may not convert their Chapter 7 case to a case under

Chapter 13, I will now address the Chapter 7 Trustee's Objections to Exemptions.  I begin by

reviewing Debtors' argument that the Chapter 7 Trustee's Objections are time barred because

they were filed late.   For the reasons that follow, I disagree.

**A. Timely Filing of Trustee's Objection to Debtors' Exemptions.**

**1.  Chronology of the Dates of Critical Events.**

- June 14, 2004 - Original Chapter 13 petition filed ("Chapter 13 Filing Date")

- September 14, 2004 - First creditors' meeting during the Chapter 13 ("Chapter 13
Creditors' Meeting")

- September 12, 2005 - Conversion to Chapter 7 ("Chapter 7 Conversion")

- October 24, 2005 - Creditors' meeting during the Chapter 7 ("Chapter 7 Creditors'
Meeting")

- November 18, 2005 - Trustee's Objection to Exemptions ("Trustee's Objection")

- December 22, 2005 - Amended Schedules B (Personal Property) & C (Exempt
Property)

18

- January 20, 2006 - Trustee's Supplemental Objection to Exemptions ("Supplemental Objection")

## 2.  Discussion of the Timeliness of Trustee's Objection to Exemptions.

Debtors cite <u>Bell v. Bell</u> (<u>In re Bell</u>), 225 F.3d 203, 218  (2ᵈ Cir. 2000), for the proposition that "conversion does not reset the limitations period for filing objections to a debtor's claimed exemption."  The Second Circuit, however, specifically limited the holding in <u>Bell</u> to the conversion from Chapter 11 to Chapter 7, <u>Id.</u> at 225, n. 20, and also noted that the debtor's filing of an amended schedule of exemptions would have created a new thirty-day time period for objections to exemptions to be filed under Fed. R. Bankr. P. 4003(b) ("Rule 4003(b)").[13]   <u>Id.</u> at 225, n. 21.

The <u>Bell</u> decision therefore cannot support an argument that no new deadline for objecting to exemptions arises in a conversion from Chapter 13 to Chapter 7.   I will review this issue at more length below.  Furthermore, Debtors' filing of their Amended Schedule C on December 22, 2005, automatically extended the Trustee's time to object for thirty days and the Trustee filed her Supplemental Objection on January 20, 2006.  As cited by <u>Bell</u>, Rule 4003(b) specifically states that "a party in interest may file an objection to the list of property

---

[13]Fed. R. Bankr. P. 4003(b) states, in pertinent part:

> A party in interest may file an objection to the list of property claimed as exempt only within 30 days after the meeting of creditors held under §341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later.  The court may, for cause, extend the time for filing objections if, before the time to object expires, a party in interest files a request for an extension. . . .

19

claimed as exempt . . . within 30 days after any amendment to the list or supplemental

schedules is filed." Debtors claim that their Amended Schedule C did not trigger a new

thirty-day period for filing objections to exemptions because they filed it solely to cure the

Trustee's Objection. That is clearly incorrect pursuant to Rule 4003(b), which does not

provide exceptions from its grant of additional time. For these and the following reasons, I

find that the Trustee's Objection and Supplemental Objection were timely filed.

As noted by the District Court in <u>Wiggins v. Frank</u> (<u>In re Wiggins</u>), 341 B.R. 501, 503

(M.D. Pa. 2006), courts are split on whether a new thirty-day period for objecting to

exemptions arises upon a debtor's conversion of his case. Some courts hold that a new thirty-

day period for objecting to exemptions under Rule 4003(b) does not commence upon

conversion of a Chapter 13 case to Chapter 7. These courts rely upon the language of Fed. R.

Bankr. P. 1019(2) ("Rule 1019(2)"),[14] which provides, inter alia, that new time periods for

filing (1) proofs of claim, (2) complaints objecting to discharge generally, or (3) complaints

objecting to the discharge of a particular debt, arise upon conversion of a case from Chapter

---

[14]Fed. R. Bankr. P. 1019(2) states, in pertinent part:

> When a chapter 11, chapter 12, or chapter 13 case has been
> converted or reconverted to a chapter 7 case:
> (2) A new time period for filing claims, a complaint
> objecting to discharge, or a complaint to obtain a determination of
> dischargeability of any debt shall commence pursuant to Rules 3002,
> 4004, or 4007, provided that a new time period shall not commence
> if a chapter 7 case had been converted to a chapter 11, 12, or 13 case
> and thereafter reconverted to a chapter 7 case and the time for filing
> claims, a complaint objecting to discharge, or a complaint to obtain a
> determination of the dischargeability of any debt, or any extension
> thereof, expired in the original chapter 7 case.

11, 12, or 13 to Chapter 7.  Because the thirty-day time period for objecting to exemptions

found in Rule 4003(b) is not mentioned in Rule 1019(2), these courts hold that the time period

is not reset upon the conversion of a case to Chapter 7. See In re Rogers, 278 B.R. 201

(Bankr. D. Nev. 2002); In re Beshirs, 236 B.R. 42 (Bankr. D. Kan. 1999); DiBraccio v.

Ferretti (In re Ferretti), 230 B.R. 883 (Bankr. S.D. Fla. 1999).

Other courts, however, hold that the thirty-day time period to object to exemptions

recommences when a Chapter 13 case is converted to Chapter 7.  These courts rely on the

interplay of Section 341(a), 11 U.S.C. §341(a), and Rule 1019(2), Fed. R. Bankr. P. 2003(a)

("Rule 2003(a)"), and  Fed. R. Bankr. P. 4003(b) ("Rule 4003(b)").  These courts note that

unlike the deadlines found in Fed. R. Bankr. P. 3002 (deadline for filing proofs of claim), Fed.

R. Bankr. P. 4004 (deadline for filing complaints under Section 727(a), 11 U.S.C. §727(a))

and Fed. R. Bankr. P. 4007 (deadline for filing complaints under Section 523(a), 11 U.S.C.

§523(a)), all of which begin to run from "the first date set for the meeting of creditors under

§341(a)," the deadline in Rule 4003(b) for objecting to exemptions begins to run "after the

meeting of creditors held under §341(a) is concluded . . . ."

Because a new Section 341(a) meeting of creditors must be held when a case is

converted from Chapter 13 to Chapter 7, see Sections 341(a) and 348(a), 11 U.S.C. §348(a),

and Fed. R. Bankr. P. 2003(a), a new thirty-day time deadline for filing objections to

exemptions would be created upon the conclusion of the Section 341(a) meeting of creditors

in the converted Chapter 7 case.  This explains why Rule 1019(2), which creates a new thirty-

day time period for filing proofs of claim and complaints under Sections 523(a) and 727(a)

upon the conversion of a case from Chapter 11, 12 or 13 to Chapter 7, does not include a time

21

period for filing objections to exemptions.  See Wiggins, 341 B.R. at 505; Weissman v. Carr

(In re Weissman), 173 B.R. 235 (M.D. Fla. 1994); Campbell v. Stewart (In re Campbell), 313

B.R. 313 (10th Cir. BAP 2004); In re Hopkins, 317 B.R. 726 (Bankr. E.D. Mich. 2004); In re

Mims, 249 B.R. 378 (Bankr. D. N.J. 2000); In re Havanec, 175 B.R. 920 (Bankr. N.D. Ohio

1994).

I agree with the reasoning espoused by the courts who hold that the thirty-day time

period to file objections to exemptions recommences when a Chapter 13 case is converted to

Chapter 7.  Wiggins, 341 B.R. at 505; Weissman, 173 B.R. at 237; Campbell, 313 B.R. at

320-1; Hopkins, 317 B.R. at 730; Mims, 249 B.R. at 383; Havanec, 175 B.R. at 924.  I agree

with and adopt at length the explanation by the Bankruptcy Court for the Eastern District of

Michigan:

>This court also agrees with the court in In re Havanec,
>175 B.R. 920 (Bankr. N.D. Ohio 1994).  The Havanec court
>found that no conclusions could be drawn from the omission of
>any reference to objections to exemptions in Fed. R. Bankr. P.
>1019(2).  The court stated "the draftsmen of Rule 1019(2) might
>well have concluded that the language of Rule 4003(b) was
>sufficiently clear to assure that the trustee could object to
>[exemptions] following the conclusion of the Chapter 7
>creditors meeting after the case had been converted."  In re
>Havanec, 175 B.R. at 924.  See also In re de Kleinman, 172
>B.R. 764, 770 (Bankr. S.D. N.Y. 1994) (Recognizing that the
>rulemakers drafted the rules with knowledge of the distinction
>between "meeting of creditors" and "first meeting of creditors"
>by the express language contained in Fed. R. Bankr. P. 3002(c),
>3004, 4004(a) and 4007(a)).
>
>The cases that apply rules of statutory construction to
>conclude that a Chapter 7 trustee does not retain the right to
>object to exemptions after conversion, distort and confuse the
>plain language of §§348 and 341.  Many of these cases were
>fact driven.  See In re Ferretti, 230 B.R. 883 (Bankr. S.D. Fla.

22

1999) (Objection to exemption issue fully litigated by the
Chapter 13 trustee prior to the conversion of the case to Chapter
7). Unique facts do not justify ignoring the plain language of
the Code. The Court rejects such reasoning and the line of
cases that deny a Chapter 7 trustee the right to object to
exemptions post-conversion.

Additional grounds exist for the Court to find that a
Chapter 7 trustee may object to a debtor's exemptions post-
conversion. The statutory duties imposed on a Chapter 7
Trustee require that the Chapter 7 trustee be able to object to a
debtor's exemptions post-conversion. See In re Lang, 276 B.R.
716, 720 (Bankr. S.D. Fla. 2002)(commenting that the duties of
a Chapter 7 trustee require objection to exemptions post-
conversion).

Under the Bankruptcy Code, different duties exist for a
Chapter 7 trustee and a Chapter 13 trustee. . . . Notably absent
from the duties of a Chapter 13 trustee is the first and primary
duty of a Chapter 7 trustee to "collect and reduce to money the
property of the estate for which such trustee serves, and close
such estate as expeditiously as is compatible with the best
interests of parties in interest." (citations omitted). As "the
representative of the estate," the Chapter 7 trustee is vested with
the duty to liquidate assets and distribute those assets for the
benefit of creditors. The amount available to distribute to
creditors is entirely dependent on a debtor's exemptions. A
Chapter 7 trustee cannot fully perform his duty unless he
analyzes the accuracy of the exemptions and files an objection
to those which reduce the amount to be distributed to creditors.
In comparison, a Chapter 13 trustee oversees the administration
of Chapter 13 plans, which includes payments to creditors. The
primary focus of the Chapter 13 trustee relates to issues
involving confirmation - that is feasibility. In a Chapter 13, a
debtor's exemptions are rarely an issue because the debtor's
property is not being liquidated. The Chapter 13 trustee seldom
objects to exemptions because the exemptions have no impact
on confirmation issues unless the liquidation analysis required
under §1325(a)(4) indicates that creditors would receive more in
a Chapter 7 case. Chapter 13 trustees have neither the
obligation nor the incentive to investigate the exemptions.

An interpretation of the Code that bars Chapter 7

23

> trustees from objecting to exemptions after conversion, presumes that the Chapter 13 trustee conducts a thorough analysis of the debtor's exemptions in every case making a subsequent review unnecessary and inappropriate. This interpretation ignores the realities of the bankruptcy process and is inconsistent with the duties of Chapter 7 and Chapter 13 trustees.
>
> The duty to maximize the distribution of liquidated assets rests with a Chapter 7 trustee. In order to fulfill this duty, a Chapter 7 trustee must have the ability to object to exemptions post-conversion. To prohibit the Chapter 7 trustee from having this right is to prevent the trustee from performing his statutory duty. The Court rejects this interpretation because it is contrary to the plain language of the Code and frustrates the fundamental role of a Chapter 7 trustee.

Hopkins, 317 B.R. at 732-33.

Turning once again to the facts before me, Debtors converted their Chapter 13 case to a case under Chapter 7 on September 12, 2005. The Chapter 7 Creditors' Meeting was held and concluded on October 24, 2005. Less than thirty days later, on November 18, 2005, the Chapter 7 Trustee filed the Trustee's Objection. On December 22, 2005, Debtors amended their exemptions by filing an Amended Schedule C. Less than thirty days later, the Chapter 7 Trustee filed her Supplemental Objection, on January 20, 2006.

I therefore find that both the Chapter 7 Trustee's Objection and the Supplemental Objection were timely filed under Rule 4003(b).

## B.  The Substance of Trustee's Objections to Debtors' Exemptions.

Having determined that the Chapter 7 Trustee's Objections to Exemptions were timely filed, I will now address the merits of the Objections. In their original Schedule C (Property Claimed as Exempt), Debtors listed the following assets as exempt under Section 522(d)(5),

11 U.S.C. §522(d)(5)("Section 522(d)(5)"):

> (1) Cash on Hand: Value of claimed exemption: $40.00. Current market value of property without deducting exemptions: $40.00;
> (2) Bank Accounts: Value of claimed exemption: $50.00. Current market value of property without deducting exemptions: $50.00
> (3) Bank Accounts: Value of claimed exemption: $50.00. Current market value of property without deducting exemptions: $50.00;
> (4) Money Market Account: Value of claimed exemption: $200.00. Current market value of property without deducting exemptions: $200.00;
> (5) Stock of Liner-Leeds: Value of claimed exemption: Any equity. Current market value of property without deducting exemptions: Unknown;
> (6) Stock of Movi-E-Town, Inc.: Value of claimed exemption: Any equity. Current market value of property without deducting exemptions: Unknown; and
> (7) Stock of SMG Entertainment, Inc.: Value of claimed exemption: Any equity. Current market value of property without deducting exemptions: Unknown.

In the Chapter 7 Trustee's Objection, she objected to Debtors' attempt to exempt the stock in the three corporations because Debtors failed to identify both a dollar amount for the exemptions and a current market value for the stock.[15]  Debtors responded by filing Amended Schedules B and C in which they amended their declarations of the value of their personal property rather simplistically, again attempting to exempt their interests in the stock of Liner-Leeds, LLC, Movi-E-Town, Inc., and SMG Entertainment, Inc. under Section 522(d)(5), as follows:

---

[15]The Chapter 7 Trustee's Objection originally included an objection to Debtors' attempt to exempt "any equity" in their residence under Section 522(d)(1), 11 U.S.C. §522(d)(1).  The Chapter 7 Trustee's Supplemental Objection did not oppose Debtors' attempt to exempt the equity in their residence at all.  The Chapter 7 Trustee's brief supporting her original Objection does not address Debtors' attempt to exempt equity in their residence.  I conclude, therefore, that the Chapter 7 Trustee is no longer pressing her objection to Debtors' attempt to exempt the equity in their residence, see also note 16, infra.

(1) Stock of Liner-Leeds, LLC: Value of claimed exemption: $200.
Current market value of property claimed as exempt: $200;
(2) Stock of Movi-E-Town, Inc.: Value of claimed exemption: $200.
Current market value of property claimed as exempt: $200; and
(3) Stock of SMG Entertainment, Inc.: Value of claimed exemption:
$200.  Current market value of property claimed as exempt: $200.[16]

The Chapter 7 Trustee responded by filing her Supplemental Objection, in which she

alleged that she had received an offer to purchase Debtors' stock in Movi-E-Town, Inc., for

$50,000. The Chapter 7 Trustee further objects in her Supplemental Objection to Debtors'

claim of exemptions to the extent Debtors seek to exempt any proceeds from the sale of stock

in any of the corporations in excess of $200 per corporation.  For the reasons that follow, I

agree with and sustain the Chapter 7 Trustee's Objections.

Debtors, in their Amended Schedule C, claim their interests in the shares of the three

corporations to be exempt under Section 522(d)(5) in the amount of $200 for each

corporation.  Section 522(d)(5) permits a debtor to exempt "[t]he debtor's aggregate interest

in any property, not to exceed in value $975 plus up to $9,250 of any unused amount of the

exemption provided under paragraph (1) of this subsection."  Pursuant to Section 522(m), 11

U.S.C. §522(m), the exemptions permitted to be claimed apply separately to each Debtor, and

therefore, Debtors may utilize Section 522(d)(5) to exempt their aggregate interest in any

property, not to exceed in value $1,950.  Debtors had already exempted the full amount

permitted to be exempted under Section 522(d)(1), 11 U.S.C. §522(d)(1) ("Section

---

[16]Debtors also indicated in their Amended Schedule C that they were exempting up to
$36,900 in equity in their residence under Section 522(d)(1) and up to $1,010.00 in equity in
their residence under Section 522(d)(5).  I need not address this portion of the amendment,
however, because I deem the Chapter 7 Trustee to have abandoned any objection to Debtors'
claim of an exemption in their residence.  See note 15, supra.

522(d)(1)"), in their residence, and therefore, no unused amount under Section 522(d)(1) can be added to the Section 522(d)(5) exemption. Debtors, however, utilized most of their Section 522(d)(5) exemption to exempt up to $1,010 in equity in their residence, $40 in cash on hand, $100 in bank accounts, and $200 in a money market account, leaving them with $600 to exempt under Section 522(d)(5) in any other property. They used that residual $600 amount to exempt $200 in the stock of each of the three corporations.

Debtors argue that because they listed the value of the stock in each of the corporations as $200, and then exempted the full $200 in value in the stock of each of the corporations, that they must be deemed to have exempted the full value of the stock, whatever the value of the stock may turn out to be. The cases relied upon by Debtors to support this proposition involve situations in which the Trustee failed to object timely to the debtors' claim of exemption, and the courts found that, under those facts, the Trustee was also time barred from challenging the value of the exemption claimed by the debtors. See Taylor v. Freeland & Kronz, 503 U.S. 638 (1992); Allen v. Green (In re Green), 31 F.3d 1098 (11th Cir. 1994). These cases are obviously distinguishable from the case at hand, however, because I have already determined that the Chapter 7 Trustee's Objections to Exemptions were timely filed. The Chapter 7 Trustee may therefore challenge the value of the exemptions claimed by Debtors.

As stated previously, Section 522(d)(5) permits Debtors to exempt their aggregate interest in any property up to $1,950. I agree with and adopt the analysis of Section 522(d)(5) espoused by the court in Soost v. NAH, Inc. (In re Soost), 262 B.R. 68, 72 (8th Cir. BAP 2001), as follows:

27

> [W]hen a debtor takes an exemption in a particular asset
> pursuant to section 522(d)(5), the "property claimed as exempt"
> within the meaning of section 522(l) is merely an interest in
> property not to exceed a specified value.  See 11 U.S.C.
> §522(d)(5); Owens v. Owens, 500 U.S. 305, 310 (1991) ("Most
> of the federally listed exemptions (set forth in §522(d)) are
> explicitly restricted to the 'debtor's aggregate interest' or the
> 'debtor's interest' up to a maximum amount.").  Accordingly,
> where the value of an asset exceeds the amount of the claimed
> exemption, the asset as a whole does not become exempt.  See
> Wissman v. Pittsburgh Nat'l. Bank, 942 F.2d 867, 871 (4th Cir.
> 1991)("We do not agree . . . that by claiming [as exempt] a
> value less than the statutory maximum, or  no value at all, as in
> this case, the entire property becomes exempt.").  Instead, only
> a partial interest representing a certain amount of the asset's
> value is exempted.  Specifically, the exempted interest has a
> value that is equal to the amount of the claimed exemption.
> Under these circumstances, the bankruptcy estate retains an
> interest in the subject asset because only a partial interest has
> been exempted by the debtor.

See also Addison v. Reavis, 158 B.R. 53, 57-8 (E.D. Va. 1993), aff'd 32 F.3d 562 (4th Cir.

1994); Pope v. Clark (In re Clark), 274 B.R. 127, 133 (Bankr. W.D. Pa. 2002); In re Bregni,

215 B.R. 850, 852-53 (Bankr. E.D. Mich. 1997); In re Heflin, 215 B.R. 530, 535 (Bankr.

W.D. Mich. 1997); In re DeSoto, 181 B.R. 704, 710 (Bankr. D. Conn. 1995); In re

Shoemaker, 155 B.R. 552, 555 (Bankr. N.D. Ala. 1992).  As I explained above, Debtors in

this case are utilizing Section 522(d)(5) to exempt several assets ($1,010 in equity in their

residence, $40 in cash on hand, $100 in bank accounts, and $200 in a money market account),

leaving them with $600 to exempt under Section 522(d)(5) in any other property, which they

may use to exempt $200 in the stock of each of the three corporations.   For all of these

reasons, I sustain the Chapter 7 Trustee's Objections to Exemptions to the extent that Debtors

are attempting to exempt more than $200 in the stock of each of the three corporations.

Accordingly, I will issue an appropriate Order denying Debtors' Motion To Convert

and sustaining the Chapter 7 Trustee's Objections to Exemptions.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re:                                    :
STEVEN L. SAUNDERS                        :          Case No. 04-23144REF
and EMILY J. SAUNDERS,                    :          Chapter 7
           Debtors                        :

O R D E R

AND NOW, this 7th day of September, 2006, upon my consideration of

Debtors' Motion To Convert Case to Chapter 13 and the Chapter 7 Trustee's Objection

thereto, and based upon the discussion contained in the accompanying Memorandum Opinion,

it is HEREBY ORDERED that Debtors' Motion To Convert Case to Chapter 13 is DENIED.

IT IS FURTHER ORDERED, upon my consideration of the Chapter 7

Trustee's Objections to Exemptions and the Reply thereto filed by Debtors, and based upon

the discussion contained in the accompanying Memorandum Opinion, that the Chapter 7

Trustee's Objections to Exemptions are SUSTAINED.

IT IS FURTHER ORDERED that Debtors' claim of an exemption of $200 in

the value of their stock in each of the following entities: Liner-Leeds, LLC, Movi-E-Town,

Inc., and SMG Entertainment, Inc., under Section 522(d)(5), 11 U.S.C. §522(d)(5), is hereby

limited to an exemption in the amount of $200 per entity.

BY THE COURT

_____
Richard E. Fehling
United States Bankruptcy Judge